UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


ALLSTATE INSURANCE COMPANY                                    PLAINTIFF

VS.                          CIVIL ACTION NO. 3:05CV669TSL-JCS

FRANK MELTON, EARL PIERCE,
AND JIMMY SAXTON                                            DEFENDANTS


MEMORANDUM OPINION AND ORDER

A number of motions are pending before the court for consideration, as follows:

1.  Defendant Jimmy Saxton's motion to abstain or to stay proceedings;

2.  Plaintiff Allstate Insurance Company's motion for summary judgment;

3.  Defendant Earl Pierce's motion for partial summary judgment; and

4.  Defendant Frank Melton's cross-motion for judgment or dismissal without prejudice or for stay of proceedings pending resolution of underlying case.

Each of these motions has been fully briefed by the parties and the court, having considered the motions and related memoranda with attachments, concludes that the motions to dismiss, abstain or stay should be denied; that Pierce's motion for partial summary judgment should be denied; and that Allstate's motion for summary judgment should be granted.

This case involves a dispute relating to insurance coverage for defendant Frank Melton under his Allstate homeowners policies and Allstate umbrella policy for a lawsuit brought against him by defendants Earl Pierce and Jimmy Saxton in the Circuit Court of Lauderdale County, Mississippi.  In its complaint in this cause and in its motion for summary judgment, Allstate maintains that it is entitled to an adjudication from this court that as a matter of law, the subject policies do not cover and/or exclude from coverage the claims against Melton in the underlying lawsuit.  In his response, Melton submits that Allstate's motion is altogether without merit inasmuch as the pleadings in the underlying action suggest the potential for coverage under each of the policies.  In contrast, defendants Pierce and Saxton have advised they do not oppose Allstate's motion for summary judgment as it pertains to Melton's Allstate homeowners policies, but they contend the umbrella policy provides coverage for their claims against Melton; and for his part, Pierce not only opposes Allstate's motion as to the umbrella policy, but also contends he is entitled to partial summary judgment on the issue of coverage under the umbrella policy.  All three defendants, however, argue that since the underlying lawsuit has not yet been finally resolved, this court should stay this case (or abstain or dismiss) pending resolution of the underlying case.

THE UNDERLYING LAWSUIT

The "facts" portion of the complaint/amended complaint filed by Pierce and Saxton in the Lauderdale County Circuit Court alleged that on April 17, 2003, Melton, who was at the time director of the Mississippi Bureau of Narcotics,

> intentionally disseminated a highly confidential MBN internal memorandum concerning unfounded, uncorroborated and false information to the press, namely Ana Radelat of the Clarion Ledger.  Melton intentionally disseminated this information for the purpose of having it published by the press to embarrass and damage the reputations of [Saxton and Pierce].  The Clarion Ledger did publish excerpts from this memorandum on or about April 18, 2003.  Defendant Melton disseminated the internal memorandum to the press without corroborating said information or verifying the credibility of the so called "confidential informant" that provided the information.  Furthermore, Melton knew of the falsity of the allegations contained in the internal memorandum or showed reckless disregard for the truth or falsity of the allegations contained in the internal memorandum when he disseminated it to the press.

Based on these allegations, Saxton and Pierce asserted claims against Melton for intentional infliction of emotional distress (alleging that Melton acted with malice and reckless disregard of their rights), negligent infliction of emotional distress (alleging, alternatively, that he was "grossly negligent when he disseminated the internal memorandum to the press"), and libel and slander.  Saxton and Pierce demanded damages for "emotional distress, mental anguish, damage to reputation and potential lost income."

Upon being served with the complaint, Melton forwarded the suit papers to Allstate, demanding defense and indemnification

3

under his homeowners policies and a personal umbrella policy.
Allstate immediately assumed Melton's defense under a reservation
of rights, and assigned Michael Cory to Melton's defense.

Counsel filed an answer on Melton's behalf, denying the
plaintiffs' allegation that he had furnished the confidential
internal memorandum to the reporter, Radelat.  Likewise, in
subsequent responses to interrogatories and requests for
admissions, Melton repeatedly denied that he had given the
confidential memorandum at issue to Radelat.  However, in July
2005, less than a month after the state court judge ordered
Radelat to reveal the source of the memorandum, Melton filed
amended discovery responses in which he admitted, for the first
time, that he had in fact given the memo to Radelat.  This
revelation prompted Pierce, joined by Saxton, to move the court to
strike Melton's answer and to enter a default judgment against him
based on Melton's having given intentionally false discovery
responses.  Following a hearing on the motion, the state court, by
order entered August 25, 2005, found that Melton's actions in
giving repeated false discovery responses "was a wilful abuse of
the discovery process and in bad faith," that Melton "clearly knew
that he was providing false answers," and that "the only possible
sanction that [would] achieve the deterrent effect" was to strike
Melton's answer and enter a default for the plaintiffs, leaving
for trial only the issue of the plaintiffs' damages.

On October 4, in the wake of the court's ruling, Allstate sent Melton another letter reserving its rights under the policies, following which it filed the present declaratory judgment action on November 3, 2005 requesting this court to declare that as to Pierce's and Saxton's allegations and claims in the underlying action, there is no coverage for or duty to defend Melton under any of three separate policies issued by Allstate to Melton, a Mississippi homeowners policy, a Texas homeowners policy, and a personal umbrella policy.

DEFENDANTS' MOTIONS TO DISMISS/STAY/ABSTAIN

The decision whether to adjudicate a declaratory judgment action involves three inquiries by the court: "(1) is it justiciable; (2) does the court have the authority to grant such relief; and (3) should it exercise its discretion to decide the action based on the factors stated in St. Paul Insurance Co. v. Trejo, 39 F.3d 585 (5th Cir. 1994)." AXA RE Property & Casualty Ins. Co. v. Day, 162 Fed. Appx. 316, 2006 WL 133532, at *2 (2006) (citing Orix Credit Alliance, Inc. v. Wolfe, 212 F.3d 891 (5th Cir. 2000)). For the following reasons, the court declines defendants' request for dismissal/ stay/abstention.

Addressing these areas of inquiry, defendants first argue that the present dispute over insurance coverage is not justiciable until a judgment is rendered against Melton in the underlying action. Their position is without merit. "[A]

5

declaratory judgment action is justiciable if "'it can presently be litigated and decided and is not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop.'" Id. (citations omitted).  Issues of an insurer's duty to defend, and potentially indemnify its insured, have been routinely found to be justiciable.  See AXA, 162 Fed. Appx. at 318 (holding that insurer's complaint seeking a declaration that it was not required to defend and/or indemnify insured in pending state court suit presented live controversy that met justiciability requirement); Burlington Ins. Co. v. Puri, 436 F. Supp. 2d 832, 835 (S.D. Miss. 2006) (insurer's suit for declaratory judgment as to duty to defend and indemnify in connection with pending state court suit clearly satisfied requirement of justiciability).

     The second issue is whether the court has the authority to grant the requested relief.  Defendants do not challenge this court's jurisdiction or authority over this cause, nor is there any valid basis for doing so.  "[A] district court may not consider the merits of the declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, and 3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act."  AXA, 162 Fed.

6

Appx. at 320 (quoting <u>Travelers Ins. Co. v. La. Farm Bureau Fed'n,</u>
<u>Inc.</u>, 996 F.2d 774, 776 (5th Cir. 1993)) (emphasis in original).
As Allstate has not been made a party to the state court action,
the coverage issue presented here cannot be decided in that action
and the Anti-Injunction Act is no bar to relief in this court.
<u>See</u> <u>id.</u> (finding that Anti-Injunction Act did not bar relief
because there was neither a state court action against the
declaratory plaintiff nor a state court action involving the same
issues as the declaratory action); <u>see</u> <u>also</u> <u>Burlington</u>, 436 F.
Supp. 2d at 835.

The seven nonexclusive <u>Trejo</u> factors that the court must
consider in deciding whether it should exercise its discretion to
decide a declaratory action, are:

> 1) whether there is a pending state action in which all
> of the matters in controversy may be fully litigated, 2)
> whether the plaintiff filed suit in anticipation of a
> lawsuit filed by the defendant,    3) whether the
> plaintiff engaged in forum shopping in bringing the
> suit, 4) whether possible inequities in allowing the
> declaratory plaintiff to gain precedence in time or to
> change forums exist, 5) whether the federal court is a
> convenient forum for the parties and witnesses, ··· 6)
> whether retaining the lawsuit in federal court would
> serve the purposes of judicial economy ··· and [7)]
> whether the federal court is being called on to construe
> a state judicial decree involving the same parties and
> entered by the court before whom the parallel state suit
> between the same parties is pending.

<u>Trejo</u>, 39 F.3d at 590-91. <u>AXA</u> involved a declaratory judgment
action in a procedurally identical context to that presented here,
and the courts concluded that abstention was not warranted on

reasoning that applies equally here.  First, since Allstate is not a party to the pending state court action, "no pending state action exists where all the matters in controversy could be fully litigated." AXA, 162 Fed. Appx. 320. Further, Allstate did not file this action in anticipation of a suit against it, and "has not engaged in improper forum shopping merely by filing a declaratory action in federal court availing itself of diversity jurisdiction." Id. at x321.  Moreover, as the issue of insurance coverage has not been broached in the underlying action, Allstate "did not inequitably gain precedence in time or change a previously selected forum for the declaration it sought." Id. This forum is obviously equally convenient as it is merely a federal court in the same location as the state court, and, as the coverage issue presented here cannot be determined in the state court action, "judicial economy is not contravened by retaining the action" in this court "because no other proceeding is able to consider the coverage dispute." Id.  Finally, this court is not being called upon to construe a state court decree involving the same parties as herein. Id.  The court thus finds that it can and should adjudicate the present dispute.

THE MOTIONS FOR SUMMARY JUDGMENT

Allstate submits that the Mississippi and Texas homeowners policies do not cover the claims in the underlying action because

(1) there was no "occurrence" as defined in the policy; (2) there was no "bodily injury" or "property damage";
(3) coverage is excluded due to Melton's intentional acts;
(4) coverage is also excluded because Melton's acts arose from his business activities as director of the MBN; and (5) there is no coverage due to Melton's false swearing, misrepresentation, concealment and failure to cooperate.  Summary judgment is in order in Allstate's favor as to the homeowners policies if there is merit to even one of these grounds urged by Allstate.

    THE HOMEOWNERS POLICIES

    As Allstate points out in its motion, subject to any applicable conditions, limitations and/or exclusions, the Mississippi homeowners policy provides coverage damages for which an insured becomes legally obligated to pay because of "bodily injury" or "property damage" arising from an "occurrence."  The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage."  As is pertinent, "bodily injury" is defined as "physical harm to the body, including sickness or disease, and resulting death . . . ," and "property damage" is defined as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction. . . ."

The Texas homeowners policy similarly provides coverage for a claim made or suit brought against an insured for damages because of "bodily injury" or "property damage" caused by an occurrence to which the insurance applies.  The policy defines "occurrence" to mean "an accident, including exposure to conditions, which result in bodily injury or property damage. . . ."  "Bodily injury" is defined as "bodily harm, sickness or disease," and "property damage" as "injury to, destruction of, or loss of use of property."

Allstate argues there was no "occurrence" because the policies define "occurrence" as an "accident," and as the underlying complaint plainly alleges and as Melton has himself admitted, Melton intentionally disseminated the confidential memorandum to Ana Radelat.  Melton argues, however, that there is the potential for coverage because while the complaint alleges that Melton intentionally provided the memorandum to Radelat, it alleges, alternatively, he was grossly negligent in doing so.

This court addressed a similar argument in Evanston Insurance Co. v. Neshoba County Fair Association, Inc., and explained the applicable Mississippi law as follows:

> [T]he Mississippi Supreme Court has held that there is no "occurrence" under policies which define "occurrence" as an "accident" if the harm for which recovery is sought from the insured resulted from an insured's intentional or deliberate actions, even if the insured did not intend such harm.  It is further settled under Mississippi law that an insurer's duty to defend . . . for injuries caused by accidents does not extend "to

10

<u>injuries unintended by the insured but which resulted
from intentional actions of the insured" even if those
actions were not intentionally tortious but rather only
negligent.  If the acts themselves were not accidental,
even if they may have been negligent, then there is no
"occurrence."</u>  See <u>United States Fidelity & Guarn. Co.
v. Omnibank</u>, 812 So. 2d 196, 197 (Miss. 2002) (holding
that "an insurer's duty to defend under a general
commercial liability policy does not extend to negligent
actions that are intentionally caused by the insured,"
or, stated another way, that "even if an insured acts in
a negligent manner, that action must still be accidental
and unintended in order to implicate policy coverage");
<u>see</u> <u>also</u> <u>ACS Const. Co., Inc. of Mississippi v. CGU</u>, 332
F.3d 885, 890 (5th Cir. 2003) (holding there was no
coverage for claims in underlying suit that contractor
had been negligent in installation of waterproofing
membrane to the roofs of munitions bunkers as a result
of which they leaked, because "even though the
installation of the membrane was done negligently, the
action of installing the membrane was not accidental nor
unintended to implicate coverage under the policy");
<u>Allstate Ins. Co. v. Moulton</u>, 464 So. 2d 507, 510 (Miss.
1985) (holding that in determining whether there had
been an occurrence, "[t]he only relevant consideration
is whether, according to the declaration, the chain of
events leading to the injuries complained of were set in
motion and followed a course consciously devised and
controlled by [the insured] without the unexpected
intervention of any third person or extrinsic force").

442 Supp. 2d 344, 346-47 (S.D. Miss. 2006); <u>see</u> <u>also</u> <u>Acceptance

Ins. Co. v. Powe Timber Co., Inc.</u>, 403 F. Supp. 2d 552 (S.D. Miss.

2005) (same) (quoted in <u>Evanston</u>).  There is no doubt, under any

version of the facts proposed by underlying plaintiffs and

acknowledged by Melton, that Melton intended to give the memo to

Radelat; and the fact that their negligence allegation could be

read as intimating that he may not have specifically intended that

she publish the memo and cause resulting harm to Pierce and

Saxton, that does not detract from the conclusion that his

11

furnishing the memo to her was no "accident" and hence no "occurrence."  For that reason, the homeowners policies provide no coverage for the underlying action.

Allstate argues that even if there was an occurrence under the policy, the damages sought by Pierce and Saxton in the underlying action, consisting of emotional distress, mental anguish, damage to reputation and potential lost income, are not "bodily injury" or "property" damages as defined in the policies and as interpreted under the law.  In response to Allstate's position, Melton argues that under Mississippi law, emotional distress damages for <u>negligent</u> infliction of emotional distress are available only if the plaintiff proves "some sort of physical manifestation of injury or demonstrable physical harm," <u>see</u> <u>American Bankers' Ins. Co. of Fla. v. Wells</u>, 819 So. 2d 1196, 1209 (Miss. 2001), and he submits, therefore, that Pierce's and Saxton's charge of negligent infliction of emotional distress implies physical "bodily" injury of some sort.  However, interpreting similar policy definitions of "bodily injury," courts in this state have consistently recognized that before there can be recovery for any "bodily injury," some "physical bodily injury must first occur."  <u>See</u> <u>QBE Ins. Corp. v. Hancock County Sewer and Water</u>, 2005 WL 1713169, *1 (S.D. Miss. 2005) (stating that the insured "does make a claim for suffering, anxiety and stress but to trigger coverage under QBE's policy for claims of mental or

12

emotional injury, physical bodily injury must first occur");
American Nat. Gen. Ins. Co. v. L.T. Jackson, 203 F. Supp. 2d 674,
*680 (S.D. Miss. 2001) (although plaintiffs did claim to have
suffered embarrassment, humiliation and emotional distress as a
result of insured's actions towards them, such harm did not
qualify as "bodily injury"); Siciliano v. Hudson, No.
2:92CV061-D-A, 1996 WL 407562 (N.D. Miss. 1996) (though plaintiff
claimed she suffered "humiliation, physical and emotional distress
and discomfort," such harm was not "the result of any outside
force inflicted upon her" and accordingly such harm was "not
sufficient to constitute 'bodily injury'" under policy).

    In the court's opinion, even if emotional distress must
manifest itself through some sort of physical symptoms in order to
be compensable where the claim is for negligent infliction of
emotional distress, physical manifestations of emotional distress,
as contrasted with physical harm inflicted from some outside
source, do not constitute "bodily injury" under Allstate's policy.


    For the foregoing reasons, the court concludes that Melton's
homeowners' policies afford him no coverage for the underlying
lawsuits.[1]

---

[1]     In addition to arguing that the claims in the lawsuits
do not fall within the policies' coverage provisions, Allstate
also argues that the claims are excluded from coverage in any
event.  In particular, it relies on the homeowners' policies'
business activity exclusions and exclusions for an insured's

THE UMBRELLA POLICY

Allstate takes the position that Melton's umbrella policy affords no coverage for the claims in the underlying lawsuit because there was no occurrence, and because coverage is excluded by virtue of the policy's intentional acts and business activity exclusions, and because Melton breached the cooperation clause and forfeited his right to coverage by his false swearing which resulted in the default judgment being entered against him.

As to the question whether the underlying suit seeks damages for an "occurrence," Allstate argues, as it did with respect to the homeowners policies, that because Melton's dissemination of the Sandefer memo was not an "accident," then there was no occurrence.  However, Allstate's argument in this regard ignores the fact that the umbrella policy's definition of "occurrence" is broader that the "occurrence" definition in the homeowners policies.

The umbrella policy states that "Allstate will pay when an Insured becomes legally obligated to pay for personal injury or property damage caused by an occurrence."  This policy, however, defines "occurrence" as "an accident <u>or</u> a continuous exposure to conditions."  (Emphasis added).  Thus, whereas Allstate correctly argues that the underlying claims do not involve an "accident," it

_____

concealment and misrepresentation.  Although the court is inclined to agree, its conclusion that the claims are not covered for other reasons makes it unnecessary to address these arguments.

14

does not account for the second part of the "occurrence"
definition.  In fact, when forced by Pierce's arguments to
acknowledge this distinction in the policies' "occurrence"
definitions, Allstate persists in arguing there was no "accident"
but it does not argue further that underlying suits do not involve
"a continuous exposure to conditions," implicitly conceding that
this aspect of the occurrence definition is satisfied by the
underlying claims.

Allstate argues that even if there was an occurrence,
however, the policy clearly excludes coverage for the intentional
acts of the insured, stating:

> This policy will not apply:
> . . .
> 8.   To any intentionally harmful act or omission
>      of an insured, even if
>      a) the personal injury or property damage
>         resulting from the act or omission occurs
>         to a person or property other than the person
>         or property to whom the act or omission was
>         intended or is of a different nature or
>         magnitude than was intended. . . .

However, as defendants point out, the policy excepts from this
exclusion certain torts, including, as is pertinent here, "libel;
slander; misrepresentation; humiliation; defamation of character;
invasion of rights of privacy. . . ."  Although Allstate makes no
mention of this exception in its briefing on its own motion for
summary judgment, in response to arguments by Pierce that the
exception applies, Allstate does appear to acknowledge that the
exclusion does not apply to claims for libel, slander and

15

defamation.  It contends, however, that while Pierce and Saxton have purported to allege a claim of libel against Melton, they have not alleged a viable claim for libel because they have not alleged a crucial element of the tort, i.e., publication, and that consequently, the exception to the intentional acts exclusion does not apply.

In support of its position, Allstate points out that the underlying complaint alleges that the confidential memorandum that was disclosed to Radelat was authored by Roy Sandefer, not Melton. The complaint also alleges that Radelat, not Melton, wrote the article that appeared in The Clarion Ledger, which allegedly defamed the underlying plaintiffs.  Allstate concludes that because Melton did nothing more than give the Sandefer memo to Radelat, who wrote the story which was then  published by The Clarion Ledger, Melton did not "publish" the article containing the defamatory statements about the underlying plaintiffs. Allstate's position on this point is without merit.  In the law of libel, "publication" simply refers to an unprivileged communication to a third party.  See Funderburk v. Johnson, 935 So. 2d 1084, 1104 (Miss. Ct. App. 2006) (elements of tort of libel include "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement

irrespective of special harm or the existence of special harm caused by the publication") (citations omitted).  As Melton "published" the Sandefer memo to Ana Radelat, Allstate's argument that the underlying plaintiffs have failed to allege a cognizable libel claim is without merit.

That brings the court to Allstate's argument that the "business activity" exclusion applies.  In pertinent part, the umbrella policy states:

Personal Activities
Coverage applies to an occurrence arising only out of:
1.  personal activities of an insured.  Activities
    related to any business or business property of
    an insured are not covered.

"Business" – means any full or part-time activity of
any kind engaged in for economic gain.
. . .

This policy will not apply:
1.  to any act, or failure to act, of any person in
    performing functions of that person's business;
2.  to any occurrence arising out of a business or
    business property.

Melton has claimed that as director of the MBN, he had the
sole authority to deal with the press and he has (at times)
contended that he made the decision as MBN director to give the
memo to Radelat in the interest of public disclosure of
corruption.  However, Pierce and Saxton have alleged and
maintained that, particularly as the allegations in the Sandefer
memo had not been corroborated or substantiated, Melton had no
legitimate business purpose in disclosing the memo to Radelat,
that he did for personal reasons (namely because of a personal
vendetta against them), and that in so doing, he acted outside the
course and scope of his authority as director of the MBN.
Moreover, the circuit court in the underlying action specifically
held that as a matter of law, Melton's position as director of the
MBN did not give him the discretionary authority to leak an

unsubstantiated confidential internal MBN memo to the press,[2] thus undermining Melton's argument that disclosing the memo was a function of his job.  Allstate nevertheless insists that regardless of what his personal motivation may have been, Melton's dissemination of the Sandefer memo was "related to" or "arose out of" his position as director of the Mississippi Bureau of Narcotics, so that there is no coverage under the umbrella policy for the claims in the underlying lawsuit.  The gist of its argument is that because the Sandefer memo was generated at Melton's instance in his capacity as director of the MBN and once prepared, was directed to Melton as director of the MBN, then the manner in which Melton thereafter used the Sandefer memo, however misguided it may have been, was related to or arose out of his position as director of MBN.

    Defendants, and Pierce in particular, suggest that "related to" is by nature a relative concept, and is "inherently ambiguous," because there are varying degrees of relatedness. They argue that "related to" can be broadly interpreted to mean simply having any connection to a person's business, no matter how remote; or it could be more narrowly construed, consistent with the definitions in the business exclusions (or at least the first exclusion), to extend coverage unless the activity in question is

_____

        [2]    The court held this in the context of rejecting Melton's claim that he was entitled to immunity under the Mississippi Tort Claims Act.

"related to" the performance of a person's job.  Defendants submit that in view of this apparent ambiguity, the policy must be interpreted in favor of coverage.

In the court's opinion, however, Melton's dissemination of the (unsubstantiated) memo, while not a function of his job, was "related to" his job.  The fact that there can be varying degrees of relatedness does not make use of the phrase "related to" ambiguous.  "Related to," similar to the "arising out of" language used in the policy's business exclusion, is a naturally broad concept with an expansive reach, in the absence of limiting language, e.g. "related to" an insured's business pursuits, or business purpose, or business duties, or business functions.  The court, therefore, concludes that Melton's dissemination of the Sandefer memo to Radelat was "related to" his position as MBN director and that consequently, the policy does not extend coverage to the claims in the underlying action.[3]

CONCLUSION

For all of the foregoing reasons, it is ordered that defendants' motions to dismiss, abstain or stay are denied; that

---

[3]     In light of the court's conclusion in this regard, the court does not address Allstate's further argument that Melton's having falsely sworn that he did not leak the memo to Radelat, as a result of which a default judgment was entered against him, was a breach of the cooperation clause that has caused a forfeiture of coverage for Melton.

Pierce's motion for partial summary judgment is denied; and that Allstate's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this 29th day of March, 2007.


/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE